1  Daren R. Brinkman (State Bar No. 158698)
2  Laura J. Portillo (State Bar No. 186813)
   Kevin C. Ronk (State Bar No. 241598)
3  BRINKMAN PORTILLO RONK, APC
   4333 Park Terrace Drive, Suite 205
4  Westlake Village, CA 91361
   Telephone: (818) 597-2992
5  Facsimile: (818) 597-2998

6
   Counsel for Casitas Eubanks Group, Inc.,
7  formerly Los Robles Care Center, Inc.,
   Debtor and Debtor-in-Possession
8

9              UNITED STATES BANKRUPTCY COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11                  NORTHERN DIVISION

12
   In re:                                  Bankruptcy Case No.: 9:09-bk-13125-PC
13
   LOS ROBLES CARE CENTER, INC.,           Chapter 11
14
                                           Adversary Proceeding No.: 9:15-ap-01047-PC
15       Debtor and Debtor in Possession.
16 ──────────────────────────────          **DECLARATION OF LAURA J.
17 CASITAS EUBANKS GROUP, INC., Formerly   PORTILLO IN SUPPORT OF
   known as LOS ROBLES CARE CENTER,        PLAINTIFF'S MOTION FOR ENTRY OF
18 INC.,                                   JUDGMENT, PLUS INTEREST, COSTS
                                           OF SUIT, AND ATTORNEYS' FEES**
19            Plaintiff,
20       vs.                               Hearing Date and Time
                                           Date: September 8, 2016
21                                         Time: 10:00 A.M.
   OJAI HEALTHCARE, LLC, a California
22 limited liability company,
                                           Place:  Courtroom 201
23            Defendant.                            1415 State Street
                                                   Santa Barbara, CA 93101
24

25

26       I, Laura Portillo, hereby declare as follows:

27       1.   I am an attorney duly licensed to practice law in the state of California and before this

28 Court.

                                    1

2.   I am a principal at Brinkman Portillo Ronk, APC ("BPR") and maintain an office for the practice of law at 4333 Park Terrace Drive, Suite 205, Westlake Village, California.

3.   BPR represents plaintiff Casitas Eubanks Group, Inc., formerly known as Los Robles Care Center, Inc. ("Debtor" or "Plaintiff"), in the above-captioned bankruptcy case (the "Bankruptcy Case") and adversary proceeding (the "Adversary Proceeding"). I have personally been working on the Bankruptcy Case and Adversary Proceeding.

4.   I have personal knowledge of the facts set forth herein and could and would testify competently thereto if called upon to do so.

5.   On August 5, 2009, Los Robles Care Center, Inc., as it was known at that time, filed a petition for voluntary relief under Chapter 11 of the Title 11 of the United States Code.

6.   On June 24, 2013, Debtor and certain buyers, including Ojai Healthcare, LLC (hereinafter "Ojai" or "Defendant"), entered into that certain Asset Sale Agreement dated as of June 24, 2013, as amended by the *First Amendment to Asset Sale Agreement*, dated July 8, 2013 (the "First Amendment"), the *Second Amendment to the Asset Sale Agreement* (the "Second Amendment"), dated August 5, 2013 and *The third Amendment to Asset Sale Agreement,* dated November 20, 2013 (hereinafter collectively referred to as the "ASA") for the sale of substantially all of the Debtor's assets. A true and correct copy of the Asset Sale Agreement as modified by the First and Second Amendments was filed on August 9, 2013 as Exhibit 1 to the Debtor's motion to sell its assets and can be accessed at docket entry 249-1, page 1 through 249-3, page 55 of 65.

7.   The ASA excluded certain assets, such as receivables for services rendered and goods sold by Debtor prior to the December 2, 2013 closing date of the sale and all rights to moneys and other sums due or to become due from any governmental or regulatory authority with respect to any period ending before the closing date of the sale. See ASA at Section 1.2, pgs. 5-6 (Dckt 249-1, pgs. 16-17 of 20).

8.   On October 9, 2013, the Court entered an order in the Bankruptcy Case approving the Debtor's motion to sell its assets. The order approving the Debtor's motion to sell it assets [Dckt 319 in Bankruptcy Case] was modified by order entered on November 27, 2013 [Dckt 339 in Bankruptcy Case], to reflect the terms of the Third Amendment to Asset Sale Agreement.

Declaration of Laura Portillo

9.   As required by the ASA and in order to facilitate the transition of the operational and financial responsibility of the Facility to Ojai, on December 2, 2013, Debtor and Ojai entered into a management operations transfer agreement (the "MOTA").  A true and correct copy of the MOTA is attached hereto as Exhibit "A".

10.   Section 4.3 of the MOTA requires Ojai to transfer to Debtor all cash revenues received by Ojai related to the period prior to the closing date of the sale. Exhibit "A" at pgs. Exh A-9-10.

11.   The Sale of the Debtor's assets closed on December 2, 2013.

12.   In connection with the sale of the Debtor's assets, Los Robles Care Center, Inc. changed its name to Casitas Eubanks Group, Inc.

13.   On June 12, 2015, Debtor commenced the Adversary Proceeding by filing a complaint against Ojai, among others, to recover receivables due under the ASA and MOTA.

14.   On September 10, 2015 the Debtor amended complaint (hereinafter the "FAC") [Dckt 43 in Adversary Proceeding].

15.   The Third and Fourth Claims for Relief asserted in the FAC against Ojai are for breach of the MOTA and ASA, respectively. See FAC at pgs. 7-9; ¶¶ 43 -58.

16.   On September 22, 2015, Ojai submitted the Offer of Judgment Pursuant to Federal Rule of Civil Procedure 68 (the "Offer of Judgment"), which Plaintiff subsequently accepted.

17.   On December 11, 2015, Ojai filed the *Notice of Acceptance by Plaintiff Casitas Eubanks Group, Inc., of Offer of Judgment by Defendant Ojai Healthcare, LLC, Pursuant to Federal Rule of Civil Procedure 68* (the "Notice of Acceptance")[Dckt 68 in Adversary Proceeding].  A true and correct copy of the Notice of Acceptance, which attaches the Offer of Judgment, is attached hereto as Exhibit "B".

18.   The Offer of Judgment states, in part,

> Defendants Ojai Healthcare, LLC ("Ojai") and James Preimesberger ("Preimesberger" and collectively with Ojai, "Defendants") offer to allow entry of judgment to be taken against Ojai Pursuant to Rule 68 of the Federal Rules of Civil Procedure as follows: a judgment in favor of plaintiff Casitas Eubanks Group, Inc. ("Plaintiff") and against Ojai in the sum of $166,577.35 plus all interest, costs of suit, and attorneys' fees as may be approved by the Bankruptcy Court.

19.   I oversee the assembling of bills for BPR. Attached hereto as Exhibit "C" is a bill for

3

1  the charges that have been recorded by BPR in working on the Adversary Proceeding.

2      I declare under penalty of perjury under the laws of the United States that the foregoing is

3  true and correct.

4

5      This declaration was executed on this 19th day of August 2016, at Westlake Village,

6  California.

7

8                                              /s/ Laura J. Portillo
                                                Laura J. Portillo

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Declaration of Laura Portillo

# EXHIBIT A

# MANAGEMENT AND OPERATIONS TRANSFER AGREEMENT
## Los Robles Care Center, Inc.

This MANAGEMENT AND OPERATIONS TRANSFER AGREEMENT (the "Agreement") is made and entered into as of December 2, 2013 (the "Execution Date), by and between Los Robles Care Center, Inc. ("Transferor") and Ojai Healthcare, LLC, a California limited liability company, its successors and assigns (collectively, the "New Operator" or "Manager"). Capitalized terms not defined herein shall have the same meaning set forth in the Asset Sale Agreement dated June 24, 2013 (the "ASA").

## RECITALS

A.     Transferor is debtor and debtor in possession in that certain Chapter 11 bankruptcy case currently pending in the United States Bankruptcy Court for the Central District of California, Northern Division (the "Bankruptcy Court") entitled *In re Los Robles Care Center, Inc.* (Case Number 9:09-bk-13125-RR) (the "Bankruptcy Case");

B.     Transferor is the licensed operator of the skilled nursing facility described in EXHIBIT A attached hereto and by this reference made a part hereof (the "Facility");

B.     Transferor, Samuel T. Eubanks, 601 Montgomery Street, LLC, a California limited liability company ("Purchaser"), 512 Lion Street, LLC, a California limited liability company, and New Operator have executed that certain Asset Sale Agreement (the "ASA"), dated as of even date herewith, pursuant to which Purchaser will acquire all of Transferor's rights, title and interest in the Facility.  Pursuant to the ASA, the obligations of the parties thereto are expressly made subject to and conditioned upon Bankruptcy Court Approval and execution and delivery of a management operations transfer agreement whereby New Operator will manage the Facility for Transferor from the Operations Transfer Date (as defined below) until New Operator obtains its own CDPH license to operate the Facility;

C.     Effective upon the Operations Transfer Date, New Operator will occupy the Facility pursuant to the terms of a new operating lease between Purchaser, as landlord, and New Operator, as tenant (the "New Lease");

D.     New Operator and Transferor have further agreed that New Operator will manage the Facility for Transferor from the Operations Transfer Date and during the Management Period (as defined below).  In conjunction therewith, New Operator and Transferor will enter into an Interim Sublease, the form of which is attached hereto as Exhibit "A" and incorporated herein by this reference (the "**Interim Sublease**"); and

E.     In order to facilitate a transition of operational and financial responsibility from Transferor to New Operator in a manner which will ensure the continued operation

1

Exh A - 5

of the Facility after the Operations Transfer Date in compliance with applicable law and in a manner which does not jeopardize the health and welfare of the residents of the Facility, Transferor and New Operator are desirous of documenting the terms and conditions on which New Operator will manage the Facility for Transferor as of the Operations Transfer Date and certain other terms and conditions relevant to the transition of operational and financial responsibility from Transferor to New Operator.

NOW, THEREFORE, in consideration of the foregoing premises and the mutual covenants of the parties set forth herein, IT IS HEREBY AGREED AS FOLLOWS:

1.    **Operations Transfer Date.**  For purposes hereof, the Operations Transfer Date shall be the date of Closing as set forth in the ASA,  (the "Operations Transfer Date").

2.    **Conditions Precedent**.  This Agreement is is subject to and conditioned upon (i) Bankruptcy Court Approval, and (ii) Closing as that term is defined in the ASA.  If Transferor has not obtained Bankruptcy Court Approval and/or Closing does not occur pursuant to the terms and provisions of the ASA, then this Agreement shall be null and void and of no further force and effect and neither party shall have any further rights or obligations hereunder.

3.    **Management of the Facility**. Commencing on the Operations Transfer Date and ending on the date New Operator obtains its CDPH license, Medicare and Medi-Cal provider numbers and tie-in notice from the Centers for Medicare and Medi-Cal Services ("CMS") permitting New Operator to bill under its own provider numbers and provider agreements (collectively, the "Tie-In") to operate the Facility in its own name (the "Management Period"), Transferor hereby irrevocably appoints New Operator as its sole and exclusive manager of the Facility. Once New Operator receives the Tie-In this Agreement shall terminate. Transferor shall use commercially reasonable efforts to cooperate with New Operator in all respects to make the transition in management of the Facility to Manager as smooth as possible.

3.1    In connection with New Operator's assumption of operational and financial responsibility for the Facility, Transferor shall immediately provide to New Operator a list of all Facility accounts and numbers for same (e.g., Medi-Cal and Medicare Provider numbers and workers compensation insurance and claims information).

3.2    Only with respect to the time period accruing during the Management Period, New Operator shall arrange (utilizing Facility personnel as appropriate) at its sole cost and expense for the provision of the bookkeeping, accounting, and administrative functions, including the following, as determined by New Operator.

3.2.1    Preparation and maintenance of business records and financial and other reports;

2

*1488109MOTA.11132013*

Exh A - 6

     3.2.2    Establishment and administration of accounting procedures and controls;

     3.2.3    Financial and business planning;

     3.2.4    Processing and payment of accounts payable;

     3.2.5    Billing, processing and collection of accounts receivable, including the billing and completion of any reports and forms that may be required by insurance companies, governmental agencies, or other third-party payors; and

     3.2.6    Providing and processing of all employee record keeping, payroll accounting (including social security and other payroll tax reporting), and benefits for all employees of the Facility.

     3.3    New Operator shall arrange for the maintenance, repair, trash removal, and janitorial services which may be necessary to maintain the Facility and equipment in a clean and safe condition and in good repair in accord with standards established by the New Lease.  New Operator shall arrange for laundry service for the Facility.

     3.4    New Operator shall arrange for the utilities reasonably required for operation of the Facility, including but not limited to, telephone, electricity, gas, water and refuse disposal.

     3.5    New Operator shall arrange for the provision and replenishment, as New Operator deems necessary, of all supplies and inventory used in the Facility.

     3.6    New Operator shall arrange for all employees whom New Operator determines to be necessary to effectively and efficiently operate the Facility. New Operator shall be in compliance with any and all applicable employment and staffing rules, regulations, statutes and laws.  New Operator shall be responsible for all aspects of administration of employees, including hiring, training, supervision, and termination. Except as otherwise determined by New Operator all employees shall be employed by New Operator. New Operator shall maintain during the Management Period worker's compensation insurance as required by law and employer's liability insurance in accord with the New Operator's standard policy.

     3.7    New Operator, on behalf of the Facility shall arrange for maintenance of the payroll records of all employees, for the issuance of paychecks on a twice monthly basis, and for the payment and withholding from such paychecks of appropriate amounts and taxes, including, without limitation, trust fund taxes, income tax, social security, unemployment insurance, and for all benefits, including vacation, holidays, and other benefits in accord with the approved policies.

*Exh A - 7*

3.8    New Operator shall have the right to revise the fee schedules for the services rendered by the Facility.

3.9    New Operator shall have the right to utilize the existing Facility name and change the name of the Facility during the Management Period if and when it chooses to do so.

3.10    New Operator shall procure and maintain during the Management Period comprehensive general liability, property, and other insurance in amounts and with coverages required under the New Lease, and with New Operator and Transferor each as named insured, as their interest appear. Such insurance shall include professional, general comprehensive with coverage limits of not less than the amounts required under the terms of the Lease. The cost of such insurance shall be deemed an "operating expense" of the Facility.

4.    **Billings, Collections and Accounts Receivable.**

4.1    Only with respect to the time period accruing during the Management Period, New Operator shall bill patients and payers and use its good faith efforts to collect all cash revenue resulting from the Facility operations during the Management Period. Transferor agrees to cooperate with New Operator to make available such billing and accounting information and to provide such financial records for review as shall be necessary to accomplish the billing and collection of patient charges for services provided for in this Section 4.1 and to cooperate with New Operator in the completion of reports and claim forms as necessary to procure payments and reimbursement from governmental agencies, insurance carriers or other third party payors. Transferor hereby irrevocably appoints New Operator to be its true and lawful attorney-in-fact for the following purposes:

4.1.1    To bill patients during the Management Period in Transferor name, on Transferor's behalf, and under Transferor's provider numbers, specifically including services provided to Medicare and Medi-Cal patients during the Management Period, and the resulting revenue will be treated as revenue of New Operator (and New Operator shall have the sole right to use and/or direct the use of such funds).

4.1.2    To collect accounts receivable resulting from such billing in Transferor's name;

4.1.3    To receive payments from insurance companies, prepayments from health care plans, and payments from all other third party payers;

4.1.4    To take possession of and endorse in the name of Transferor any notices, checks, money orders, insurance payments, and other instruments received in payment of the accounts receivable resulting from such billing; and

*1488109MOTA.11132013*

Exh A - 8

4.1.5    To initiate legal proceedings, at the expense of New Operator, in accordance with policies approved by Transferor to collect any accounts or monies owed to the Facility or Transferor related to the Facility during the Management Period.

4.2    On or before the Operations Transfer Date, New Operator may open a banking account for the Facility in the name of Transferor (the "Management Account"), the authorized signatories of which shall consist solely of persons designated by New Operator. Transferor agrees that it will not take any actions that interfere with the transfer of funds into the Management Account, nor will Transferor  remove, withdraw or authorize the removal or withdrawal of any funds from the Management Account. As of the Closing, Transferor shall ensure that New Operator has access to the Facility bank accounts to which Medicare and Medi-Cal receivables are deposited.  Amounts deposited into Transferor's bank account and relating to operations of the Facility on and after the Operations Transfer Date shall be immediately transferred into the Management Account. The foregoing notwithstanding, New Operator acknowledges and agrees that Transferor shall be entitled to open one or more new accounts prior to or at closing for the purposes of transferring all funds to which Transferor is entitled under the ASA and any amounts due to Transferor under this Agreement.  It is further agreed that New Operator shall not have access to such accounts.

4.3    All cash revenue (a) received during the Management Period which relates solely to the Management Period and/or (b) relates solely to operating revenues generated from and after the Operations Transfer Date (even if received after the end of the Management Period) shall be the property of and shall be under the control of New Operator, rather than Transferor. Accordingly, if Transferor directly or indirectly receives any such cash revenue during the Management Period which relates solely to the Management Period, Transferor shall forward any such receipts (together with remittance advices) within five (5) days of receipt to New Operator for deposit in the Management Account and if New Operator directly or indirectly receives any cash revenue during the Management Period which relates to the period prior to the Management Period, New Operator shall forward any such receipts (together with remittance advices) within five (5) days of receipt to Transferor. New Operator shall use the cash revenues which relate to the operation of the Facility during the Management Period to pay for expenses incurred during the Management Period, including both expenses paid during such period and expenses which are due after the Management Period but which were incurred during the Management Period. In the event any person, entity or agency withholds any operating revenues or cash revenues owed to the Facility due to any action, omission, report, audit, investigation, claim, demand, order, or judgment relating to facts or operation of the Facility prior to the Operations Transfer Date which has not been stayed, released and/or waived under the Bankruptcy Code or by an order of the Bankruptcy Court, including, without limitation, an order approving the sale of assets to Purchaser and New Operator and the transactions set forth therein, Transferor shall within thirty

Exh A - 9

(30) days reimburse the Management Account or New Operator for any and all such revenue.

4.4     In furtherance and not in limitation of the allocation of revenues provided for in Section 4.3, New Operator and Transferor agree as follows:

4.4.1     If such payments either specifically indicate on the accompanying remittance advice, or if the parties agree, that they relate to the period prior to the Operations Transfer Date, they shall be retained by or forwarded to Transferor, along with the applicable remittance advice, in accordance with the provisions of Section 4.4.5 below.

4.4.2     If such payments indicate on the accompanying remittance advice, or if the parties agree, that they relate to the period from and after the Operations Transfer Date, they shall be forwarded or retained by New Operator, along with the applicable remittance advice, in accordance with the provisions of Section 4.4.5 below.

4.4.3     If such payments indicate on the accompanying remittance advice, or if the parties agree, that they relate to periods for which both parties are entitled to reimbursement under the terms hereof, the portion thereof which relates to the period from and after the Operations Transfer Date shall be forwarded to or retained by New Operator and the balance shall be retained by or remitted to Transferor in accordance with the provisions of Section 4.4.5 below.

4.4.4     Any payments received by New Operator from and after the Operations Transfer Date from or on behalf of private pay patients with outstanding balances as of the Operations Transfer Date shall be remitted to Transferor.  Any payments received by New Operator from and after the Operations Transfer Date from or on behalf of private pay patients with outstanding balances as of the Operations Transfer Date which fail to designate the period to which they relate (an "Undesignated Payment"), will, for the thirty (30) day period after the Operations Transfer Date, first be applied by New Operator to reduce the patients' pre-Operations Transfer Date balances, with any excess applied to reduce any balances due for services rendered by New Operator from and after the Operations Transfer Date; after said thirty (30) day period such Undesignated Payment may be retained by New Operator to reduce the patient's post-Operations Transfer Date balances, with any excess remitted to Transferor to reduce any balances due for services rendered by Transferor prior to the Operations Transfer Date.

4.4.5     All amounts owing to Transferor or New Operator under this Section 4.4 shall be settled within five (5) days after the end of each month in which the payment was received.

Exh A - 10

4.4.6    In the event the parties mutually determine that any third party payors or private pay residents are entitled to a refund of payments, the portion thereof that relates to the period from and after the Operations Transfer Date shall be paid by New Operator and the portion thereof that relates to the period prior to the Operations Transfer Date shall be paid by Transferor to such third party payor or private pay resident.

4.4.7    In the event the parties mutually determine that any payment hereunder was misapplied by the parties, the party which erroneously received said payment shall remit the same to the other within fifteen (15) business days after said determination is made.

4.4.8    For a period of twelve (12) months from the Operations Transfer Date, each of Transferor and New Operator shall have the right to inspect, no more frequently than once per week, all cash receipts of the other party during weekday business hours on reasonable prior notice in order to confirm such party's compliance with the obligations imposed on it under this Section 4.4.

4.4.9    Effective on the Closing, Transferor shall take all immediate steps reasonably necessary to change the "Pay To" address of all Medi-Cal, Medicare and CalOptima payments from its current depository accounts to the Management Account. Transferor will take no action to change or alter the electronic funds transfer of all Medi-Cal, Medicare or any payments from any County Organized Health System, such as CalOptima.  In addition, Transferor hereby appoints New Operator as its sole and exclusive agent and as power of attorney to execute any and all documents necessary to effactually implement the provisions of this section.  Such power of attorney is coupled with an interest and is irrevocable.

5.    **Management Fee.**

5.1    For its services under Sections 3 and 4, New Operator shall be entitled to a fee from Transferor (the "<u>Management Fee</u>") equal to the Facility's operating revenues less all operating expenses, resulting from operation of the Facility during the Management Period, calculated in accordance with generally accepted accounting principles. New Operator shall pay for any and all licensing fees to the California Department of Public Health from and after the Operations Transfer Date.

5.2    If the Facility incurs losses during the Management Period, New Operator shall be responsible for such losses and shall indemnify and defend Transferor from all claims, demands, liability, and losses related thereto, including payment of the Transferor's obligation under the Lease and, to the extent paid by Seller, license renewal fees, provided no expense relates to operation of the Facility before the Operations Transfer Date except for expenses for inventory and supplies which were ordered by

ExhA-11

Transferor in the ordinary course of business prior to the Operations Transfer Date and received and accepted by New Operator after the Operations Transfer Date.

5.3    New Operator shall render an accounting to Transferor and the Management Fee shall be determined within thirty (30) days following the end of each month, subject to any final adjustment as necessary when all cost reports have been fully processed.

5.4    The Management Fee is based upon revenues earned and expenses incurred during the term of this Agreement, as determined in accordance with generally accepted accounting principles. Except as specifically set forth in Section 5.2, New Operator has no responsibility to pay for expenses during the term of this Agreement but which were incurred by Transferor prior to the Operations Transfer Date, it being understood and agreed that revenues and expenses will be prorated in the manner set forth in Section 10. Thus, for example, in calculating the Management Fee the cost of utilities will be prorated as of the Operations Transfer Date so that New Operator is responsible for the cost of utilities only during the Management Period.

## 6.  **Change of Ownership.**

6.1    On the Operations Transfer Date, Transferor shall assign to New Operator its Medicare and Medi-Cal Provider Agreements.

6.2    Within thirty (30) days after the Execution Date, New Operator shall file all applications and other documents required by CDPH or other governmental authority for the issuance of all governmental authorities, licenses, registrations and permits used in or necessary to (i) operate such skilled nursing facility; (ii) provide the level of care and services they provide; and (iii) receive federal and state reimbursement payments with respect to qualified patients who are patients of the Facility (collectively, the "Permits") and thereafter New Operator shall diligently proceed with securing the Permits and shall, from time to time, upon request of Transferor, advise Transferor of the status of New Operator's efforts to secure the Permits. Transferor shall have the right to discuss New Operator's license application with the staff at CDPH.

6.3    Promptly upon receipt of a request therefore from Transferor, New Operator will provide Transferor with copies of its licensure applications and any further documents submitted by New Operator to the CDPH or other governmental authority in response to any requests from such governmental authority and with copies of its Permits.

6.4    In connection with the transfer of the Facility pursuant to the terms of this Agreement and upon receipt of the Permits by the New Operator and the provision of evidence of the same by New Operator to Transferor, Transferor  shall, in a timely manner, furnish a letter to CDPH stating that Transferor's license will be relinquished to CDPH contingent upon the issuance of the new license to New Operator.

*1488109MOTA.11132013*

Exh A - 12

7. **Transfer of Resident Trust Funds.**

7.1    On the Operations Transfer Date, Transferor shall prepare and deliver to New Operator a true, correct, and complete accounting and inventory (properly reconciled) of any resident trust funds and residents' property held by Transferor as of the Operations Transfer Date in trust for residents at the Facility (collectively the "Resident Trust Funds").

7.2    On the Operations Transfer Date, Transferor hereby agrees to transfer to New Operator the Resident Trust Funds and New Operator hereby agrees that it will accept such Resident Trust Funds in trust for the residents/responsible parties and be solely accountable to the residents/responsible parties for such Resident Trust Funds in accordance with the terms of this Agreement and applicable statutory and regulatory requirements.

7.3    Within five (5) days after the Operations Transfer Date, Transferor shall prepare a final reconciliation comparing the actual Resident Trust Fund balance on the Operations Transfer Date to the amount of the Resident Trust Funds transferred to New Operator on the Operations Transfer Date and to the extent the former exceeds the latter, Transferor shall remit such excess to New Operator or to the extent the latter exceeds the former, New Operator shall remit such excess to Licensee.

7.4    New Operator shall have no responsibility to the applicable resident/responsible party and regulatory authorities in the event the Resident Trust Funds delivered by Transferor to New Operator pursuant to Section 7.2 are demonstrated to be less than the full amount of the Resident Trust Funds for such resident as of the Effective Date, for inaccuracies in the accounting and inventory provided by Transferor, or for claims which arise from actions or omissions of Transferor with respect to the Resident Trust Funds prior to the Operations Transfer Date but all of the foregoing shall be and remain the responsibility of Transferor.

7.5    Except as set forth in Section 7.4, Transferor shall have no responsibility to the applicable resident/responsible party and regulatory authorities with respect to any Resident Trust Funds delivered to New Operator.

8. **Cost Reports.** Transferor shall timely prepare and file before delinquency with the appropriate Medicare and Medi-Cal agencies any final cost reports with respect to its operation of the Facility which are required to be filed by law under the terms of the Medicare and Medi-Cal Programs for that portion of 2013 to the Operations Transfer Date.    New Operator shall timely prepare and file before delinquency with the appropriate Medicare and Medi-Cal agencies any final cost reports with respect to its operation of the Facility which are required to be filed by law under the terms of the Medicare and Medi-Cal Programs for that portion of 2013 following the Operations Transfer Date and subsequent. The foregoing notwithstanding, the parties recognize that

Exh A-13

such final cost reports for 2013 will include the period from the Operations Transfer Date to the day prior to the effective date of the "tie in" notice (the "Pre-Tie In Period"). Within five (5) business days of request by New Operator and/or Transferor, New Operator and/or Transferor shall provide New Operator and/or Transferor with copies of the appropriate cost reports, together with copies of any amendments thereto and correspondence related to such final cost reports. Transferor has filed all previously required Medicare and Medi-Cal cost reports. Transferor will provide the appropriate agencies and/or fiscal intermediaries with any information needed to support claims for reimbursement made by Transferor either in said terminating cost reports or any cost reports filed for prior cost reporting periods. If requested, Transferor shall promptly provide New Operator with copies of such reports or claims and supporting documentation. New Operator will provide Transferor with any information which the New Operator has in its possession that Transferor reasonably requests in order to accurately and timely prepare the reports or respond to such claims. Transferor acknowledges that its failure to timely file such cost reports will result in cessation of reimbursement of Medicare and/or Medi-Cal payments and/or monetary fines, penalties and damages against New Operator.

## 9. **Employees.**

9.1    Transferor shall terminate all of the Facility' employees effective as of 11:59 p.m. on the day immediately prior to the Operations Transfer Date. Transferor shall pay, in accordance with applicable laws, including bankruptcy laws, directly to such employees any unpaid wages and benefits which Transferor is required by law to pay to the employees of the Facility as of the Operations Transfer Date (the "Benefits"). Transferor shall provide New Operator with a list of employees at least two (2) days prior to the Operations Transfer Date and shall permit New Operator, in cooperation and coordination with Transferor, to meet with the employees of the Facility prior to the Operations Transfer Date and to advise them of New Operator's proposed plans with respect to the hiring of the employees of the Facility and the benefits which will be offered to the employees of the Facility.

9.2    New Operator has advised the Transferor that it presently intends to offer employment to at least two thirds (2/3) of the employees of the Facility and in reliance on such statements Transferor and New Operator have agreed that a closure notice will not be provided to the employees of the Facility.

9.3    New Operator agrees to cooperate with Transferor to provide information concerning which employees, if any, are retained by New Operator and the service descriptions and salary levels for any such retained employees. Such employees whose employment is continued shall be referred to as the "Retained Employees." Transferor or any of its affiliates shall have the right to employ or offer to employ any employee not offered employment by New Operator or any employee who declines to continue employment with New Operator.

10

*1488109MOTA.11132013*

Exh A - 14

9.4    Transferor shall offer and provide, as appropriate, group health plan continuation coverage pursuant to the requirements of Section 601, et seq. of ERISA and Section 4980B of the Internal Revenue Code ("COBRA") to all of the employees of the Facility to whom it is required to offer the same under applicable law. New Operator agrees to cooperate with Transferor in providing information concerning which employees, if any, are retained by New Operator after the Operations Transfer Date, and the nature of the benefits offered to each such employee. Notwithstanding the foregoing, New Operator will offer to the Retained Employees the right to participate in New Operator's health insurance program as of the Operations Transfer Date subject to any and all applicable waiting periods and exclusions for pre-existing conditions (the "Health Insurance").

10. **Costs and Prorations.**

10.1    As between New Operator and Transferor, revenues (including any amount paid to Transferor prior to the Operations Transfer Date for services to be rendered on and after the Operations Transfer Date from social security payments, private pay patients prepayments, applied income payments, resident trust prepayments, etc.), Facility operating expenses (other than the Retained Liabilities), bed taxes, utility charges for the billing period in which the Operations Transfer Date occurs, real and personal property taxes (except as otherwise provided herein), prepaid expenses, (excluding business licenses and any CDPH license fees), the premiums for any flood insurance coverage which may be in effect with respect to the Facility and provide coverage for the benefit of New Operator with respect to a period which extends beyond the Operations Transfer Date and other related items of revenue or expense attributable to the Facility shall be prorated between Transferor and New Operator as of the Operations Transfer Date. In general, such prorations shall be made so that as between New Operator and Transferor, (i) Transferor shall be reimbursed for prepaid expense items to the extent that the same are applied to expenses attributable to periods after the Operations Transfer Date and Transferor shall be charged for unpaid expenses to the extent that the same are attributable to periods prior to the Operations Transfer Date, and (ii) New Operator shall be reimbursed for prepaid services that are for services to be provided to residents of the Facility on and after the Operations Transfer Date. This provision shall be implemented by New Operator remitting to Transferor any invoices (or the applicable portion thereof in the case of invoices which cover periods prior to the Operations Transfer Date) which describe goods or services provided to the Facility before the Operations Transfer Date and by New Operator assuming responsibility for the payment of any invoices (or portions thereof) which describe goods or services provided to the Facility on and after the Operations Transfer Date; *provided, however*, that notwithstanding any provision of this Agreement to the contrary any and all deposits paid by Transferor with respect to the Facility, including without limitation any and all Lease, utility deposits paid to, and/or cash or other collateral held by, any Landlord, utility, insurance company or surety (other

Exh A - 15

than its prepaid skilled nursing facility license fees) shall be prorated at the Operations Transfer Date.

10.2    All such prorations shall be made on the basis of actual days elapsed in the relevant accounting or revenue period and shall be based on the most recent information available to Transferor. Utility charges which are not metered and read on the Operations Transfer Date shall be estimated based on prior charges, and shall be re-prorated upon receipt of statements therefor as of the Operations Transfer Date. Insurance premiums and payments shall not be pro-rated and New Operator shall obtain its own insurance coverage covering all periods commencing on and after the Operations Transfer Date.

10.3    All amounts which are subject to proration under the terms of this Agreement and which require adjustment after the Operations Transfer Date shall be settled within thirty (30) days after the Operations Transfer Date or, in the event the information necessary for such adjustment is not available within said thirty (30) day period, then within ten (10) business days of receipt of information by either party necessary to settle the amounts subject to proration, but in no event beyond the end of the Management Period.

10.4    On the Operations Transfer Date, Transferor shall remove from the Facility any petty cash, other than residents trust funds, which shall be handled in the manner set forth in Section 7.

10.5    This Agreement shall not affect, and Transferor shall retain, whatever right, title and interest it may have in and to any insurance proceeds or condemnation awards which may be due and owing to Transferor as a result of any covered incidents of damage or destruction to, or takings of, the Facility or any part thereof occurring prior to the Operations Transfer Date even if the same are not paid until after the Operations Transfer Date. In furtherance of the foregoing, New Operator agrees (a) upon reasonable advance notice and during normal business hours to provide such access to the Facility as may be required by Transferor or any third party adjuster or representative of a condemning authority to settle any such insurance claims/condemnation proceedings and (b) in the event any such insurance proceeds or condemnation awards are directed to New Operator or the Facility rather than to Transferor, to hold such insurance proceeds/condemnation awards in trust for Transferor and to remit the same to Transferor in the form received, without offset or deduction of any kind, within ten (10) days after receipt thereof. Except as otherwise provided for in this Agreement, New Operator does not assume any obligation or liability of any nature of the Transferor and shall have no obligation for any liability, claim or obligation of the Transferor.

10.6    In addition to any costs for which New Operator is responsible under Section 5 hereof, New Operator shall be solely responsible for all costs, fees and expenses incurred by it in connection with the transfer of operations of the Facility as contemplated hereunder, including but not limited to the cost of any training of the

ExhA-16

Facility's employees which it may elect to undertake with the Consent consent of Transferor, which consent shall not be unreasonably withheld provided such training is conducted in a manner which does not disrupt the operation of the Facility prior to the Operations Transfer Date, and the cost of any due diligence that it undertakes in furtherance of such transfer of operations, included but not limited to, the costs of any examination or copying by New Operator or its agents of any books, records, patient files or other operational or fiscal information and data of any kind of Licensee or the Facility. In furtherance and not in limitation of the foregoing, in the event that in the process of any such employee training and/or due diligence examinations Transferor shall incur any out of pocket costs or expenses related to the use of its employees, equipment and/or the provision of any such information, New Operator shall, within ten (10) days after a written demand therefor accompanied by reasonably detailed supporting documentation, reimburse Transferor for all of such out of pocket costs and expenses.

11. **Access to Records.**

11.1    On the Operations Transfer Date, Transferor shall deliver to New Operator all records necessary to the efficient, continued operation of the Facility. Nothing herein shall be construed as precluding Transferor from removing from the Facility (a) the originals of the financial records which relate to its operations at the Facility, including all accounts payable and accounts receivable records; *provided, however*, Transferor shall leave copies of such records at the Facility in order to facilitate the provisions of this Agreement, (b) originals of employee records for all former employees not employed by New Operator, (c) copies of retained employee records, (d) copies of patient records for all former patients no longer residing at the Facility and (e) copies of records for all current patients residing at the Facility.

11.2    From and after the Operations Transfer Date, New Operator shall allow Transferor and its agents and representatives to have reasonable access to (upon reasonable prior notice and during normal business hours), and to make copies of, the books and records and supporting material of the Facility relating to the period prior to and including the Operations Transfer Date, to the extent reasonably necessary to enable Transferor to among other things investigate and defend malpractice, employee or other claims, to file or defend cost reports and tax returns, to complete/revise, as needed, any patient assessments which may be required for Transferor to seek reimbursement for services rendered prior to the Operations Transfer Date, to verify accounts receivable collections due Transferor and to file exceptions to the Medicare routine cost limits for the cost reporting periods prior to and including the Operations Transfer Date.

11.3    Transferor shall have the right, within five (5) days of the delivery of a request therefor to New Operator to enter the Facility and remove originals or copies of any such records delivered to New Operator and permitted to be removed by Transferor under Section 11.1; *provided, however*, that if directed by Transferor in its request to New Operator, New Operator shall within such five (5) day period, forward such records

13

Exh A-17

to Transferor to the address designated by Transferor; and provided, further, that if, for purposes of litigation involving a patient or employee to whom such record relates, an officer of or counsel for Transferor certifies that an original of such record must be produced in order to comply with applicable law or the order of a court of competent jurisdiction in connection with such litigation then the records so delivered or removed shall be an original.  Any record so removed shall promptly be returned to New Operator following its use, and nothing herein shall be interpreted to prohibit New Operator from retaining copies of any such documents.

11.4    New Operator agrees to maintain such books, records and other material comprising records of the Facility's operations prior to the Operations Transfer Date that have been received by New Operator from Transferor or otherwise, including, but not limited to, patient records and records of patient funds, to the extent required by law, and in accordance with all applicable laws, and shall, at Transferor's request, allow Transferor a reasonable opportunity to remove such documents, at Tranferor's expense, at such time after such record retention period as may be required by law as New Operator shall decide to dispose of such documents.

11.5    New Operator acknowledges and agrees that the books, records and other materials described in this Section 10 are unique, that in the event of a breach by New Operator of its obligations under this Section 10, Transferor would suffer injury for which it would not be fully compensated with monetary damages and accordingly that in the event of a breach by New Operator of its obligations under this Section 10, Transferor shall be entitled to seek to enjoin a breach by New Operator of its obligations under this Section 10 and/or to specifically enforce the obligations of New Operator hereunder and shall also be entitled to liquidated damages.

## 12.  Operating Contracts and Vehicles.

12.1    In accordance with the ASA and that certain Assignment and Assumption of Assumed Contracts executed of even date herewith, subject to and conditioned upon (i) Bankruptcy Court Approval, and (ii) Closing, to the extent such assignment and assumption shall be permissible under applicable law, Seller will have assigned and New Operator will have assumed certain contracts associated with the Facility from Transferor (the "Assumed Contracts").  Except as otherwise set forth in the ASA, subject to and conditioned upon (i) Bankruptcy Court Approval, and (ii) Closing, any contracts relating to the Purchased Assets not expressly assumed thereunder by New Operator shall be terminated by Transferor on or before the Operations Transfer Date (the "Terminated Contracts").

12.2    Transferor and New Operator acknowledge and agree that any vehicles, if any, is located at and used by the Facility, shall be remain at the Facility and be conveyed by Transferor to New Operator on the Operations Transfer Date (the "Vehicle").

Exh A - 18

12.3    Transferor and New Operator acknowledge and agree that in the event that the termination of any Terminated Contract will not be effective until after the Operations Transfer Date as a result of notice provisions set forth in such contacts (the "Termination Date"), if and to the extent that New Operator derives any benefit from the goods or services provided under such Terminated Contract between the Operations Transfer Date and the Termination Date, New Operator shall, upon demand, reimburse Transferor for any payments under such Terminated Contracts made by Transferor between the Operations Transfer Date and the Termination Date.

13.  **Proprietary Information and Materials.**  New Operator acknowledges and agrees that any and all proprietary and confidential materials and information located at and used in connection with the operation of the Facility, including but not limited to, its policy and procedure manuals, shall be transferred to New Operator on the Operations Transfer Date.

14.  **Computer Systems and Telecommunications Equipment and Other Property.** Transferor will leave at the Facility and transfer to New Operator on the Operations Transfer Date all of the computer hardware and software, telecom systems and other such assets (collectively, the "Computer and Telecom Systems") and that Transferor shall take such action as may be necessary to assign to New Operator any licenses held by Transferor with respect thereto, if and to the extent such licenses are assignable, or to assist New Operator in securing such licenses in its own name, if and to the extent such licenses are not assignable.

15.  **Indemnification.**

15.1    Purchaser and New Operator hereby indemnify and agree to defend and hold harmless Transferor and its directors, officers, employees, agents, attorneys, including, Brinkman Portillo Ronk, PC and the successors and assigns from and against any and all Losses incurred in connection with or arising from: (a) a breach by New Operator of its representations, warranties and obligations under this Agreement which is not cured within ten (10) days after receipt of written notice from Transferor setting forth in reasonable detail the nature of such breach; *provided, however*, that the inability by New Operator to secure the Permits  shall not be deemed to be a breach by New Operator in its obligations hereunder provided it has proceeded with all due diligence to secure the same, (b) the acts or omissions of New Operator under the Assumed Contracts from and after the Operations Transfer Date, (c) use of the Transferor's Medicare and Medi-Cal licenses, provider numbers and agreements and the occupancy or operation of the Facility by New Operator from and after the Operations Transfer Date, (d) any acts, omissions, elder abuse (as that term is defined above), torts, fraud, willful misconduct or negligence of New Operator or any person claiming under New Operator, or the contractors, agents, employees, invitees or visitors of New Operator with respect to the Facility from and after the Operations Transfer Date, (e) lack of compliance with or violation of the notice provisions of the Worker Adjustment Retraining and Notification Act  (the "WARN

15

Exh A - 19

Act") and Sections 1400-1408 of the California Labor Code, or (f) any failure by New Operator to pay any liabilities in connection with the Facility attributable to periods from and after the Operations Transfer Date; *provided, however*, nothing in this Section 15.1 shall be construed as imposing any liability on New Operator for the Retained Liabilities, which shall be and remain the responsibility of Transferor.    For purposes of this Agreement the term "Retained Liabilities" shall mean and include (a) the acts or omissions of Transferor under the Assumed Contracts prior to Operations Transfer Date, (b) the acts or omissions of Transferors under the Terminated Contracts (except as otherwise provided under Section 12.3 hereof), (c) the leasing, occupancy or operation of the Facility by Transferor prior to the Operations Transfer Date, (d) any acts, omissions, elder abuse (as that term is defined in California Welfare and Institutions Code §15610) or negligence of Transferor or any person claiming under Transferor, or the contractors, agents, employees, invitees or visitors of Transferor with respect to the Facility prior to the Operations Transfer Date, and (e) any failure by Transferor to pay any liabilities in connection with the Facility attributable to periods prior to the Operations Transfer Date, whether they arise prior to or after the Operations Transfer Date. For purposes of this Agreement the term "Loss(es)" shall mean and include any and all demands, claims, causes of action, fines, penalties, damages (but specifically excluding lost profits and consequential damages), losses, liabilities (including strict liability), judgments, and expenses (including, without limitation, reasonable attorneys' and other professionals' fees and court costs).

15.2    The foregoing indemnification obligation shall survive this Agreement.  All matters arising from an indemnified party's negligence, gross negligence or willful misconduct are excluded from the scope of the indemnification owing to such party set forth in Sections 15.1.

15.3    Nothing in this Section 15 or elsewhere in this Agreement shall be construed as imposing any personal liability on any officer, director, employee, agent, member of Transferor  or its counsel, including Brinkman Portillo Ronk, PC, or New Operator for the acts or omissions of Transferor or New Operator, respectively, under this Agreement.

16.    **Termination.**

16.1    Automatic Termination. This Agreement shall terminate automatically, without any action by either party, on December 31, 2014.

16.2    Termination by Mutual Consent. This Agreement may be terminated at any time by mutual written consent of the Transferor and New Operator.

16.3    Termination of ASA. This Agreement shall terminate automatically, without any action by either party, upon any termination of the ASA.

16

Exh A-20

16.4    <u>Effect of Termination</u>. If a party terminates this Agreement because one of the conditions precedent hereunder has not been satisfied, or if this Agreement is otherwise terminated for a reason other than termination by passage of time or a material breach by any of the parties hereto of any of its representations, warranties, or covenants in this Agreement, this Agreement shall become null and void without liability of any party to the other.

17.    **Further Assurances.**  Each of the parties hereto agrees to execute and deliver any and all further agreements, documents or instruments necessary to effectuate this Agreement and the transactions referred to herein or contemplated hereby or reasonably requested by the other party to perfect or evidence their rights hereunder.

17.    **Notices.**  All notices to be given by either party to this Agreement to the other party hereto shall be in writing, and shall be (a) given in person, (b) deposited in the United States mail, certified or registered, postage prepaid, return receipt requested, or (c) sent by national overnight courier service or by facsimile transmission with confirmed receipt, each addressed as follows:

If to New Operator:    c/o Ojai Healthcare, LLC
11620 West Washington Blvd.
Los Angeles, CA 90066
Attn.: James Preimesberger
Telephone:
Email: jamespceo@aol.com


with a copy to
(which shall not
constitute notice):    Sanders, Collins & Rehaste, LLP
5316 E. Chapman Avenue
Orange, CA 92869
Attn.: Jennifer M. Sternshein, Esq.
Telephone: (714) 450-3887
Email: jennifer@scrhealthlaw.com

If to Transferor:    Los Robles Care Center, Inc.
Attn: Samuel Eubanks
8770 N. Ventura Avenue
Ventura, CA 93001

ExhA-21

With a copy to
(which shall not
constitute notice):    Brinkman Portillo Ronk, PC
4333 Park Terrace Drive, Suite 205
Westlake Village, CA 91362
Attn: Daren Brinkman
Attn: Kevin Ronk
Telephone: (818) 597-2992
Email: Firm@brinkmanlaw.com

Any such notice shall be deemed delivered when actually received or when delivery is first refused regardless of the method of delivery used.  Any party to whom notices are to be sent pursuant to this Agreement may from time to time change its address for further communications thereunder by giving notice in the manner prescribed herein to all other parties hereto.  Although either party shall have the right to change its address for notice purposes from time to time, any notice delivered pursuant to this Section 19 to the address set forth in this Section 19 or to such other address as may be hereafter specified in writing in accordance with this Section 19 shall be effective even if actual delivery cannot be made as a result of a change in the address of the recipient of such notice and the party delivering the notice has not received actual written notice in accordance with the provisions of this Section 19 of the current address to which notices are to be sent.

18.  **Payment of Expenses**.  Each party hereto shall bear its own legal, accounting and other expenses incurred in connection with the preparation and negotiation of this Agreement and the consummation of the transaction contemplated hereby, whether or not the transaction is consummated.

19.  **Entire Agreement; Amendment; Waiver**.  This Agreement, together with the other agreements referred to herein, constitutes the entire understanding between the parties with respect to the subject matter hereof, superseding all negotiations, prior discussions and preliminary agreements.  This Agreement may not be modified or amended except in writing signed by the parties hereto.  No waiver of any term, provision or condition of this Agreement in any one or more instances, shall be deemed to be or be construed as a further or continuing waiver of any such term, provision or condition of this Agreement.  No failure to act shall be construed as a waiver of any term, provision, condition or rights granted hereunder.

20.  **Assignment**.  Neither this Agreement nor the rights, duties or obligations arising hereunder shall be assignable or delegable by either party hereto.

21.  **No Joint Venture; Third Party Beneficiaries**.  Nothing contained herein shall be construed as forming a joint venture or partnership between the parties hereto with

Exh A-22

respect to the subject matter hereof. The parties hereto do not intend that any third party shall have any rights under this Agreement except as expressly provided herein.

22. **Captions**. The Section headings contained herein are for convenience only and shall not be considered or referred to in resolving questions of interpretation.

23. **Counterparts**. This Agreement may be executed and delivered via facsimile and in one or more counterparts and all such counterparts taken together shall constitute a single original Agreement.

24. **Governing Law, Jurisdiction and Venue**. This Agreement (and all documents, instruments and agreements executed and delivered pursuant to the terms and provisions hereof) shall be governed by and construed in accordance with the provisions of Title of 11 of the United States Code (the "Bankruptcy Code") and to the extent not inconsistent with the Bankruptcy Code, the laws of the State of California without regard to principles or provisions for conflict of law. The parties irrevocably submit to the exclusive jurisdiction of the Bankruptcy Court as to any action, or proceeding arising out of or in connection with the interpretation and enforcement of this Agreement whether at equity or at law, including any action for specific performance, breach of contract, or other equitable relief. The parties irrevocably waive, to the fullest extent permitted by law, any objection that they may have to the laying of venue of any such proceeding in the Bankruptcy Court, any claim that such proceeding has been brought in an inconvenient forum, and any right to demand a jury trial.

25. **Costs and Attorneys' Fees**. In the event of a dispute between the parties hereto with respect to the interpretation or enforcement of the terms hereof, the prevailing party shall be entitled to collect from the other its reasonable costs and attorneys fees, including its costs and fees on appeal.

26. **Construction**. Both parties acknowledge and agree that they have participated in the drafting and negotiation of this Agreement. Accordingly, in the event of a dispute between the parties hereto with respect to the interpretation or enforcement of the terms hereof no provision shall be construed so as to favor or disfavor either party hereto.

27. **Opening Mail**. New Operator shall be authorized to open mail addressed to Transferor and received at the Facility. All mail received at the Facility related to Transferor's operation of the Facility shall be promptly delivered to Transferor by New Operator at the address set forth in Section 19, with all such mail to be deposited in the United States mail, certified or registered, postage prepaid, return receipt requested within three (3) days of receipt.

[SIGNATURE PAGE FOLLOWS]

Exh A-23

*MOTA - Signature Page*

　　　　IN WITNESS WHEREOF, the parties hereby execute this Management and
Operations Transfer Agreement as of the day and year first set forth above.

　　　　　　　　　　　　　　　　TRANSFEROR:

　　　　　　　　　　　　　　　　LOS ROBLES CARE CENTER, INC.,
　　　　　　　　　　　　　　　　a California corporation

　　　　　　　　　　　　　　　　By: _____

　　　　　　　　　　　　　　　　Name: Samuel T. Eubanks , Jr.
　　　　　　　　　　　　　　　　Title:   President

　　　　　　　　　　　　　　　　NEW OPERATOR:

　　　　　　　　　　　　　　　　OJAI HEALTHCARE, LLC,
　　　　　　　　　　　　　　　　a California limited liability company

　　　　　　　　　　　　　　　　By: _____

　　　　　　　　　　　　　　　　Name: James Preimesberger
　　　　　　　　　　　　　　　　Title: Manager

Exh A-24

*MOTA - Signature Page*

IN WITNESS WHEREOF, the parties hereby execute this Management and Operations Transfer Agreement as of the day and year first set forth above.

TRANSFEROR:

LOS ROBLES CARE CENTER, INC.,
a California corporation

By:_____
Name: Samuel T. Eubanks , Jr.
Title:   President

NEW OPERATOR:

OJAI HEALTHCARE, LLC,
a California limited liability company

By: _____
Name: James Preimesberger
Title: Manager

Exh A - 25

# EXHIBIT B

Case 9:15-ap-01047-PC    Doc 68    Filed 12/11/15    Entered 12/11/15 12:42:37    Desc
Main Document    Page 1 of 9

1  MICHAEL I. GOTTFRIED (State Bar No. 146689)
   mgottfried@lgbfirm.com
2  ROYE ZUR (State Bar No. 273875)
   rzur@lgbfirm.com
3  LANDAU GOTTFRIED & BERGER LLP
   1801 Century Park East, Suite 700
4  Los Angeles, California 90067
   Telephone: (310) 557-0050
5  Facsimile: (310) 557-0056

6  Attorneys for Defendants Ojai Healthcare, LLC,
   and James Preimesberger

7

8                **UNITED STATES BANKRUPTCY COURT**

9                **CENTRAL DISTRICT OF CALIFORNIA**

10                      **NORTHERN DIVISION**

11  In re                              Case No. 9:09-bk-13125-PC

12  LOS ROBLES CARE CENTER, INC.,      Chapter 11

13                                     Adv. No. 9:15-ap-1047-PC
                  Debtor and
14                Debtor in Possession.

15                                     **NOTICE OF ACCEPTANCE BY**
                                       **PLAINTIFF CASITAS EUBANKS**
16  CASITAS EUBANKS GROUP, INC.,       **GROUP, INC., OF OFFER OF**
    formerly known as LOS ROBLES CARE  **JUDGMENT BY DEFENDANT OJAI**
17  CENTER, INC.,                      **HEALTHCARE, LLC, PURSUANT TO**
                                       **FEDERAL RULE OF CIVIL PROCEDURE**
18                Plaintiff,           **68**

19          vs.

20

21  OJAI HEALTHCARE, LLC, a California
    limited liability company; JAMES
22  PREIMESBERGER, an individual;
    PROVIDENCE GROUP, INC., a California
23  corporation; and PROVIDENCE GROUP
    OF CALIFORNIA, LLC, a California
24  limited liability company,

25                Defendants.

26

27

28

Exh B-26

1    **PLEASE TAKE NOTICE THAT** on September 22, 2015, plaintiff Casitas Eubanks

2   Group, Inc., formerly known as Los Robles Care Center, Inc. ("Plaintiff"), accepted the Offer of

3   Judgment Pursuant to Federal Rule of Civil Procedure 68 made by defendant Ojai Healthcare,

4   LLC. A copy of the Offer of Judgment is attached hereto as Exhibit 1, and a copy of Plaintiff's

5   formal acceptance of the Offer of Judgment is attached hereto as Exhibit 2.

6

7   Date: December 11, 2015          LANDAU GOTTFRIED & BERGER LLP

8

9                      /s/ Roye Zur

                       ROYE ZUR

10                  Attorneys for Defendants Ojai Healthcare, LLC,

                     and James Preimesberger

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

*Exh B-27*

# EXHIBIT 1

Exh B-28

1  MICHAEL I. GOTTFRIED (State Bar No. 146689)
   mgottfried@lgbfirm.com
2  ROYE ZUR (State Bar No. 273875)
   rzur@lgbfirm.com
3  LANDAU GOTTFRIED & BERGER LLP
   1801 Century Park East, Suite 700
4  Los Angeles, California 90067
   Telephone: (310) 557-0050
5  Facsimile: (310) 557-0056

6  Attorneys for Defendants Ojai Healthcare, LLC,
   and James Preimesberger
7

8             UNITED STATES BANKRUPTCY COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                  NORTHERN DIVISION

11  In re                          Case No. 9:09-bk-13125-PC

12  LOS ROBLES CARE CENTER, INC.,  Chapter 11

13                                 Adv. No. 9:15-ap-1047-PC
            Debtor and
14          Debtor in Possession.

15                                 OFFER OF JUDGEMENT PURSUANT TO
                                   FEDERAL RULE OF CIVIL PROCEDURE
16  CASITAS EUBANKS GROUP, INC.,   68
    formerly known as LOS ROBLES CARE
17  CENTER, INC.,

18                Plaintiff,

19          vs.

20

21  OJAI HEALTHCARE, LLC, a California
    limited liability company; JAMES
22  PREIMESBERGER, an individual;
    PROVIDENCE GROUP, INC., a California
23  corporation; and PROVIDENCE GROUP
    OF CALIFORNIA, LLC, a California
24  limited liability company,

25                Defendants.

26

27

28

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

EXHIBIT 1
2

Exh B - 29

1    **TO PLAINTIFF CASITAS EUBANKS GROUP, INC., AND ITS ATTORNEYS OF**

2    **RECORD:**

3        Defendants Ojai Healthcare, LLC ("Ojai")  and James Preimesberger ("Preimesberger"

4    and collectively with Ojai, "Defendants") offer to allow entry of judgment to be taken against Ojai

5    pursuant to Rule 68 of the Federal Rules of Civil Procedure as follows:  a judgment in favor of

6    plaintiff Casitas Eubanks Group, Inc.  ("Plaintiff") and against Ojai in the sum of $166,577.35

7    plus all interest, costs of suit, and attorneys' fees as may be approved by the Bankruptcy Court.

8    This amount shall be the total amount to be paid on account of any liability claimed in this action.

9        If Plaintiff does not accept this offer, it may become obligated to pay Defendants' costs

10    and fees incurred after the making of this offer.

11        To accept this offer, Plaintiff must serve written notice of acceptance thereof within ten

12    (10) days of the date this offer is made.

13        This offer is not an admission of liability by the Defendants, but rather is made solely for

14    the purpose of compromising a disputed claim.

15

16    Date: September 22, 2015          LANDAU GOTTFRIED & BERGER LLP

17

18    _____
    MICHAEL I. GOTTFRIED

19        Attorneys for Defendants Ojai Healthcare, LLC,
    and James Preimesberger

20

21

22

23

24

25

26

27

28

1

EXHIBIT 1
3

*Exh B-30*

LANDAU GOTTFRIED & BERGER LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# EXHIBIT 2

*Exh B-31*

| From: | Laura Portillo |
|---|---|
| To: | Michael I. Gottfried |
| Cc: | Kevin Ronk; Roye Zur |
| Subject: | Re: In re Los Robles Care Center, Inc. (9:09-bk-13125); Casitas Eubanks Group, Inc. v. Ojai Healthcare, LLC, et al. (Adv. 15-01047) - OFFER OF JUDGMENT PURSUANT TO RULE 68 OF THE FEDERAL RULES |
| Date: | Tuesday, September 29, 2015 11:39:47 AM |

Michael,
Plaintiff Casitas Eubanks accepts the Offer of Judgment you sent to us pursuant to Rule 68. We will prepare a settlement agreement and forward it to you for your approval.
Thank you for your efforts to resolve this case.
Sincerely,
Laura Portillo

On Sep 22, 2015, at 12:08 PM, Michael I. Gottfried <mgottfried@LGBFirm.com> wrote:

Laura,

We continued the hearing on the Status Conference in the hope that we could resolve the Complaint. In connection with those discussions on August 28th I received an e-mail from Kevin saying: "Finally, we are working through a list of questions to help us understand and evaluate the accounting your client provided. We are hopeful to have that list of questions to you within the next 7-10 days." We never received that list of questions. Instead, you filed an Amended Complaint without any prior discussion or correspondence with me. All of this appears to me to be litigation for the sake of litigation without any attempt to get things resolved consensually which is what I have tried to do since the commencement of the action.

Regardless, attached is an Offer of Judgment pursuant to Rule 68.

Please let me know how you want to proceed.

Regards,
Michael

Michael Gottfried
Attorney

**Landau Gottfried & Berger LLP**
1801 Century Park East, Suite 700
Los Angeles, CA 90067
Main: 310-557-0050

EXHIBIT 2
4

Exh B-32

Direct:  310-557-0052
Fax: 310-557-0056
E-mail:  mgottfried@lgbfirm.com
Web:  www.lgbfirm.com
Please consider the environment before printing.

This e-mail is a confidential communication and may also be legally privileged. If you are not the intended recipient, immediately you should: (1) reply via e-mail to sender; (2) destroy this communication and all copies thereof, including deletion of all associated text files from individual and network storage devices; and (3) refrain from disseminating this communication by any means whatsoever.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

<Offer Of Judgment.doc.docx>

EXHIBIT 2
5

Exh B-33

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

Landau Gottfried & Berger LLP, 1801 Century Park East, Suite 700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled (specify): **NOTICE OF ACCEPTANCE BY PLAINTIFF CASITAS EUBANKS GROUP, INC., OF OFFER OF JUDGMENT BY DEFENDANT OJAI HEALTHCARE, LLC, PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 68** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) **December 11, 2015**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Brian D Fittipaldi    brian.fittipaldi@usdoj.gov
Michael I Gottfried    mgottfried@lgbfirm.com,
kalandy@lgbfirm.com;cboyias@lgbfirm.com;srichmond@lgbfirm.com;sdeiches@lgbfirm.com
Laura J Portillo    office@brinkmanlaw.com, brinkmanlaw@ecf.inforuptcy.com
Hamid R Rafatjoo    hrafatjoo@venable.com, DGIge@venable.com;bclark@venable.com;kkhoang@venable.com
United States Trustee (ND)    ustpregion16.nd.ecf@usdoj.gov
Roye Zur    rzur@lgbfirm.com, kalandy@lgbfirm.com;srichmond@lgbfirm.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**
On (date) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) **December 11, 2015**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**FEDEX OVERNIGHT**
Honorable Peter H. Carroll
United States Bankruptcy Court
Central District of California
1415 State Street, Suite 230 / Courtroom 201
Santa Barbara, California 93101-2511

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 11, 2015 | Coula Boyias | *Coula Boy* |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

Exh B - 34

# EXHIBIT C

# Brinkman Portillo Ronk, APC

4333 Park Terrace Dr., Suite 205
Westlake Village, CA  91361
Telephone: (818) 597-2992
Fax: (818) 597-2998

Invoice submitted to:
Los Robles Care Center, Inc.

August 19, 2016

Professional Services

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| | | **68 Bankruptcy Litigation (Plaintiff)** | | |
| 1/9/2014 - | MS | Discussion with BPR regarding complaint; research and begin drafting regarding same. | 6.90 290.00/hr | 2,001.00 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| 3/17/2015 - | KR | Review, analyze and revise draft complaint for recovery of receivables. | 0.60 355.00/hr | 213.00 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| 5/13/2015 - | LJP | Review and revise facts of draft complaint against Ojai and Primesberger. | 0.80 455.00/hr | 364.00 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| 6/12/2015 - | KR | Review and revise complaint for recovery of receivables, civil case coversheet (1.7), research service of process address for defendants (0.4) | 2.10 355.00/hr | 745.50 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| 6/18/2015 - | KR | Review and analyze email from H.Pinkston regarding service of process of summons and complaint, respond. | 0.10 355.00/hr | 35.50 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| 7/6/2015 - | LJP | Review email from M. Gottfried regarding complaint against Ojai; Prepare email to MS and KR regarding Ojai; Telephone conference with Ojai counsel. | 0.60 455.00/hr | 273.00 |

Exh C-35

Los Robles Care Center, Inc.                                                                    Page      2

|  |  |  | Hrs/Rate | Amount |
|---|---|---|---|---|

68 Bankruptcy Litigation (Plaintiff)

| 7/6/2015 - | KR | Review email form M.Gottried to LJP regarding complaint for recovery of receivables. | 0.10<br>355.00/hr | NO CHARGE |

68 Bankruptcy Litigation (Plaintiff)

| 7/9/2015 - | KR | Review and analyze proposed stipulation extending response deadline for Providence defendants to respond to complaint, draft email to H.Pinkston regarding executed signature page | 0.20<br>355.00/hr | 71.00 |

68 Bankruptcy Litigation (Plaintiff)

| - | LJP | Review email from M. Gottfried regarding extension to respond; Prepare response. | 0.60<br>455.00/hr | 273.00 |

68 Bankruptcy Litigation (Plaintiff)

| - | KR | Review email chain between N.Koffroth and LJP regarding extension response deadline for Providence defendants. | 0.10<br>355.00/hr | NO CHARGE |

68 Bankruptcy Litigation (Plaintiff)

| 7/10/2015 - | KR | Review and analyze proposed stipulation to extend deadline for Ojai/Preimesberger to file response to complaint. | 0.10<br>355.00/hr | 35.50 |

68 Bankruptcy Litigation (Plaintiff)

| 7/13/2015 - | KR | Review and analyze email from M.Gottfried regarding settlement discussion, review and analyze supporting document. | 0.30<br>355.00/hr | 106.50 |

68 Bankruptcy Litigation (Plaintiff)

| - | LJP | Review proposal from Ojai; Analyze issues and explain to debtor. | 0.80<br>455.00/hr | 364.00 |

68 Bankruptcy Litigation (Plaintiff)

| 7/15/2015 - | KR | Review email form N.Koffroth regarding request for business contact. | 0.10<br>355.00/hr | 35.50 |

68 Bankruptcy Litigation (Plaintiff)

| - | KR | Review and analyze email from M.Gottried regarding settlement discussions, discuss with LJP, review LJP's response to M.Gottfried. | 0.30<br>355.00/hr | 106.50 |

68 Bankruptcy Litigation (Plaintiff)

*Exh C-36*

Los Robles Care Center, Inc.    Page    3

| Date | | Initials | Description | Hrs/Rate | Amount |
|------|---|----------|-------------|----------|--------|
| 7/15/2015 | - | LJP | Review email from M. Gottfried regarding proposal; Prepare response. | 0.30<br>455.00/hr | 136.50 |
| | | | 68 Bankruptcy Litigation (Plaintiff) | | |
| 7/22/2015 | - | KR | Review emails from N.Koffroth regarding request for business contact information. | 0.10<br>355.00/hr | NO CHARGE |
| | | | 68 Bankruptcy Litigation (Plaintiff) | | |
| 7/27/2015 | - | KR | Review emails from N.Koffroth regarding stipulation extending time to respond to complaint. | 0.10<br>355.00/hr | NO CHARGE |
| | | | 68 Bankruptcy Litigation (Plaintiff) | | |
| | - | KR | Review email from LJP to N.Koffroth in response to request for business contact information for Debtor. | 0.10<br>355.00/hr | NO CHARGE |
| | | | 68 Bankruptcy Litigation (Plaintiff) | | |
| 7/28/2015 | - | KR | Phone call with H.Raffid and LJP regarding request for extension of deadline to respond to complaint. | 0.20<br>355.00/hr | 71.00 |
| | | | 68 Bankruptcy Litigation (Plaintiff) | | |
| 7/29/2015 | - | KR | Review email from N.Koffroth regarding stipulation for extension. | 0.10<br>355.00/hr | 35.50 |
| | | | 68 Bankruptcy Litigation (Plaintiff) | | |
| 7/30/2015 | - | KR | Draft email to H.Raffatjoo regarding stipulation, review and analyze stipulation and proposed order, draft response to H.Rafatjoo and N.Koffroth (0.3), review response emails from H.Raftjoo (0.1) | 0.40<br>355.00/hr | 142.00 |
| | | | 68 Bankruptcy Litigation (Plaintiff) | | |
| 8/3/2015 | - | LJP | Review emails from M. Gottfried regarding settlement proposal; Prepare responses. | 0.70<br>455.00/hr | 318.50 |
| | | | 68 Bankruptcy Litigation (Plaintiff) | | |
| | - | KR | Review and analyze email from M.Gottfried regarding request for extension of deadline for Ojai/Preimeberger defendants to respond to complaint, review response from LJP. | 0.10<br>355.00/hr | 35.50 |
| | | | 68 Bankruptcy Litigation (Plaintiff) | | |
| 8/4/2015 | - | LJP | Review Ojai email and revise Stipulation to Extend; Prepare responses. | 0.60<br>455.00/hr | 273.00 |
| | | | 68 Bankruptcy Litigation (Plaintiff) | | |

Exh C - 37

Los Robles Care Center, Inc.                                                                Page      4

|  |  |  | Hrs/Rate | Amount |
|---|---|---|---|---|
| 8/4/2015 - | KR | Review emails between M.Gottfried and LJP regarding stipulation extending response deadline. | 0.10<br>355.00/hr | NO CHARGE |
|  |  | 68 Bankruptcy Litigation (Plaintiff) |  |  |
| 8/5/2015 - | LJP | Review followup email from Ojai; Conference with debtor regarding Ojai. | 0.80<br>455.00/hr | 364.00 |
|  |  | 68 Bankruptcy Litigation (Plaintiff) |  |  |
| - | KR | Review and analyze email from M.Gottfried regarding settlement negotiation. | 0.10<br>355.00/hr | 35.50 |
|  |  | 68 Bankruptcy Litigation (Plaintiff) |  |  |
| 8/10/2015 - | KR | Review and analyze email from M.Gottfried regarding settlement negotiation. | 0.10<br>355.00/hr | 35.50 |
|  |  | 68 Bankruptcy Litigation (Plaintiff) |  |  |
| - | KR | Review and analyze email from N.Koffroth regarding request call with Providence, draft email in response, review several emails in response regarding date and time for call. | 0.20<br>355.00/hr | 71.00 |
|  |  | 68 Bankruptcy Litigation (Plaintiff) |  |  |
| 8/11/2015 - | KR | Prepare for and attend conference call with Providence regarding collection of Debtor's post-sale receivables. | 0.40<br>355.00/hr | 142.00 |
|  |  | 68 Bankruptcy Litigation (Plaintiff) |  |  |
| 8/12/2015 - | KR | Review email from N.Koffroth regarding request for third stipulation extending Providence defendants' deadline to respond to complaint. | 0.10<br>355.00/hr | 35.50 |
|  |  | 68 Bankruptcy Litigation (Plaintiff) |  |  |
| 8/14/2015 - | LJP | Review email from Ojai regarding amounts owed. | 0.10<br>455.00/hr | 45.50 |
|  |  | 68 Bankruptcy Litigation (Plaintiff) |  |  |
| 8/17/2015 - | LJP | Review email from M. Gottfried regarding proposals; Prepare response; Conference with debtor. | 0.90<br>455.00/hr | 409.50 |
|  |  | 68 Bankruptcy Litigation (Plaintiff) |  |  |
| - | KR | Review and analyze email from M.Gottfried to LJP. | 0.10<br>355.00/hr | NO CHARGE |
|  |  | 68 Bankruptcy Litigation (Plaintiff) |  |  |

*Exh C-38*

Los Robles Care Center, Inc.                                                                                          Page    5

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 8/19/2015 - | KR | Review and analyze emails between M.Gottfried and LJP regarding case. | 0.20 355.00/hr | 71.00 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| 8/26/2015 - | KR | Draft email to M.Gottfried regarding request for Rule 26(f) conference, review response from M.Gottfried. | 0.10 355.00/hr | 35.50 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| 8/27/2015 - | KR | Draft emails to M.Gottfried in response to M.Gottfried response to request for Rule 26(f) conference, review and analyze M.Gottfried's response (0.3) | 0.30 355.00/hr | 106.50 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| 8/28/2015 - | KR | Draft email to M.Gottfried regarding request for conference, review and analyze M.Gottfried's response. | 0.20 355.00/hr | 71.00 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| - | KR | Prepare draft joint status report, email to M.Gottfried. | 0.30 355.00/hr | 106.50 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| - | LJP | Review and respond to Ojai email. | 0.40 455.00/hr | 182.00 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| - | KR | Review email from LJP to M.Gottfried regarding further extension of deadline for Ojai/Preimesberger defendants to respond to complaint, review response from M.Gottfried. | 0.10 355.00/hr | NO CHARGE |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| 8/31/2015 - | KR | Review email from R.Zur regarding draft stipulation for extension to respond to complaint, review and analyze proposed stipulation, review response from LJP. | 0.30 355.00/hr | 106.50 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| 9/1/2015 - | KR | Review and analyze email from R.Zur re stipulation for continuance, review email from LJP regarding same, confer with LJP, review response from LJP to R.Zur, review response from R.Zur, review revised draft stipulation. | 0.30 355.00/hr | 106.50 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| - | KR | Review and analyze email from R.Zur regarding extension of response deadline, review LJP's response. | 0.10 355.00/hr | NO CHARGE |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |

Exh C - 39

Los Robles Care Center, Inc.                                                          Page    6

|  | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 9/1/2015 - | LJP | Draft email regarding extension and deadline issues. | 0.60<br>455.00/hr | 273.00 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| 9/8/2015 - | KR | Review and analyze email from N.Koffroth regarding Providence defendants (0.1), review and analyze funds summary, wire transfer and draft stipulation for dismissal (0.3). | 0.40<br>355.00/hr | 142.00 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| 9/10/2015 - | KR | Review and analyze email from K.Hunt regarding draft amended complaint, review and revise amended complaint. | 0.40<br>355.00/hr | 142.00 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| - | KH | Amend Complaint against Ojai Health; add proof of Service to same. | 1.60<br>290.00/hr | 464.00 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| 9/12/2015 - | KH | Draft Ojai Health Motion for TRO and injunctive relief. | 5.70<br>290.00/hr | 1,653.00 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| 9/13/2015 - | KR | Review email from LJP regarding call with Providence defendants. | 0.10<br>355.00/hr | NO CHARGE |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| - | KH | Review and revise complaint regarding ASA Documents. | 1.60<br>290.00/hr | 464.00 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| 9/16/2015 - | KR | Review email from K.Hunt regarding motion for injunctive relief, draft response, review response from LJP, draft further email to K.Hunt. | 0.30<br>355.00/hr | 106.50 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| 9/17/2015 - | KR | Review and analyze email from K.Hunt regarding injunctive relief issue, draft response. | 0.10<br>355.00/hr | 35.50 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| 9/22/2015 - | KR | Review email from M.Gottfried to LJP regarding offer of judgment, review and analyze offer of judgment. | 0.20<br>355.00/hr | 71.00 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| - | LJP | Analyze offer of judgement issues; Confer with debtor. | 0.90<br>455.00/hr | 409.50 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |

*Exh C-40*

Los Robles Care Center, Inc.                                                                      Page    7

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 9/29/2015 - | KR | Phone call with D.Eubanks regarding offer of judgment (0.2), draft email to LJP regarding same, review response from LJP, draft further email to LJP, review further response from LJP (0.2) | 0.40 355.00/hr | 142.00 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| 10/2/2015 - | KR | Draft emails to K.Hunt regarding offer of judgment. | 0.20 355.00/hr | 71.00 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| 10/6/2015 - | KR | Review email from K.Hunt regarding offer of judgment and settlement agreement (0.1), review and revise draft settlement agreement (0.4). | 0.50 355.00/hr | 177.50 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| 10/7/2015 - | KR | Review and analyze email from M.Gottfried to LJP regarding request for continuance, draft response to M.Gottfried, review M.Gottfried's response. | 0.20 355.00/hr | 71.00 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| - | LJP | Review emails from Ojai; Conference with debtor. | 0.70 455.00/hr | 318.50 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| 10/9/2015 - | KR | Review and analyze email from N.Koffroth regarding request for extension of deadline of Providence defendants to file response to the complaint, review and analyze draft stipulation. | 0.30 355.00/hr | 106.50 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| - | KR | Review email from N.Koffroth regarding phone call regarding Providence entities' request for dismissal. | 0.10 355.00/hr | 35.50 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| 10/12/2015 - | LJP | Review Ojai emails and prepare response; Attend conference call. | 0.60 455.00/hr | 273.00 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| - | KR | Review email from M.Gottfried regarding request for stipulation to continue, review stipulation, draft response. | 0.30 355.00/hr | 106.50 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| - | KR | Review email from N.Koffroth regarding phone call regarding Providence entities' request for dismissal, draft email to LJP, review response from LJP, review response from N.Koffroth (0.2), prepare for and participate on call with Providence defendants (0.6). | 0.80 355.00/hr | 284.00 |

Exh C-41

Los Robles Care Center, Inc.                                                      Page      8

|  |  |  | Hrs/Rate | Amount |
|---|---|---|---|---|

68 Bankruptcy Litigation (Plaintiff)

| 10/19/2015 - | KR | Review email from N.Koffroth regarding request for dismissal, review response from LJP. | 0.10 355.00/hr | 35.50 |

68 Bankruptcy Litigation (Plaintiff)

| 10/26/2015 - | KR | Review and analyze email from K.Hunt regarding stipulation for dismissal of Providence defendants, review and revise stipulation (0.4), draft email to N.Koffroth regarding stipulation (0.1), review response from H.Rafatjoo, draft response, review further responses from H.Rafatjoo and LJP (0.2). | 0.70 355.00/hr | 248.50 |

68 Bankruptcy Litigation (Plaintiff)

| - | KR | Review email from N.Koffroth regarding request for stipulation to continue. | 0.10 355.00/hr | 35.50 |

68 Bankruptcy Litigation (Plaintiff)

| 10/28/2015 - | KR | Review email from K.Hunt regarding settlement (0.1), review and revise draft settlement agreement (0.2), draft email to M.Gottfried (0.1). | 0.40 355.00/hr | 142.00 |

68 Bankruptcy Litigation (Plaintiff)

| 10/29/2015 - | KR | Review email from H.Rafatjoo re stipulation, review response from LJP, review further response from H.Rafatjoo. | 0.20 355.00/hr | 71.00 |

68 Bankruptcy Litigation (Plaintiff)

| 10/30/2015 - | KR | Review and analyze email from M.Gottfried regarding settlement agreement. | 0.10 355.00/hr | 35.50 |

68 Bankruptcy Litigation (Plaintiff)

| 11/2/2015 - | KR | Review email from N.Koffroth regarding draft stipulation. | 0.10 355.00/hr | 35.50 |

68 Bankruptcy Litigation (Plaintiff)

| 11/10/2015 - | KR | Review email from N.Koffroth regarding stipulation to dismiss. | 0.10 355.00/hr | 35.50 |

68 Bankruptcy Litigation (Plaintiff)

| 11/11/2015 - | KR | Review email from M.Gottfried regarding response to complaint. | 0.10 355.00/hr | 35.50 |

68 Bankruptcy Litigation (Plaintiff)

| - | KH | Research regarding piercing the corporate veil. | 2.10 290.00/hr | 609.00 |

68 Bankruptcy Litigation (Plaintiff)

Exh C-42

Los Robles Care Center, Inc.                                                                    Page     9

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 11/18/2015 - | KR | Review and analyze Preimesburger's motion to dismiss complaint. | 0.30<br>355.00/hr | 106.50 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| 11/20/2015 - | KR | Review email from N.Koffroth regarding stipulation to dismiss (0.1), revise stipulation, draft email to N.Koffroth, review response (0.2). | 0.30<br>355.00/hr | 106.50 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| 11/21/2015 - | KR | Review email from M.Gottfried, review hearing calendar, draft response to M.Gottfried. | 0.30<br>355.00/hr | 106.50 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| 11/24/2015 - | KH | Draft outline for opposition to motion to dismiss. | 0.90<br>290.00/hr | 261.00 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| - | KH | Review complaint for facts alleged to pierce the veil. | 0.50<br>290.00/hr | 145.00 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| - | KH | Research regarding turnover claims as compared to breach of contract claims. | 0.60<br>290.00/hr | 174.00 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| - | KH | Research regarding injunctive relief as a claim. | 0.60<br>290.00/hr | 174.00 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| - | KH | Draft opposition to motion to dismiss. | 1.90<br>290.00/hr | 551.00 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| 11/25/2015 - | LJP | Review and revise Opposition to Motion to Dismiss; Review and respond to Ojai email. | 0.90<br>455.00/hr | 409.50 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| - | KR | Draft email to N.Koffroth regarding joint status report. | 0.10<br>355.00/hr | 35.50 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| - | KR | Review email from LJP to N.Koffroth regarding stipulation. | 0.10<br>355.00/hr | NO CHARGE |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |

Exh C-43

Los Robles Care Center, Inc.                                                                    Page    10

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 11/25/2015 - | KR | Review email from R.Zur regarding  status report, draft status report (0.4), forward to R.Zur (0.1) | 0.40 355.00/hr | 142.00 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| 11/27/2015 - | KR | Review email from R.Zur regarding joint status report, review and analyze joint status report. | 0.20 355.00/hr | 71.00 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| - | KH | Review and revise opposition to motion to dismiss. | 0.40 290.00/hr | 116.00 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| - | KH | Review and revise opposition to motion to dismiss. | 0.40 290.00/hr | 116.00 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| - | KR | Review and revise draft opposition to motion to dismiss. | 1.60 355.00/hr | 568.00 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| 12/3/2015 - | KR | Review email from N.Koffroth, review stipulation (0.2), draft proposed order on stipulation, draft email to N.Koffroth regarding proposed order, draft email to N.Koffroth regarding entered order (0.2). | 0.40 355.00/hr | 142.00 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| 12/4/2015 - | KH | Draft memo regarding defenses to reply in support of motion to dismiss. | 0.60 290.00/hr | 174.00 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| - | KH | Review new cases cited in reply. | 0.60 290.00/hr | 174.00 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| - | KH | Review reply in support of motion to dismiss. | 0.50 290.00/hr | 145.00 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| 12/22/2015 - | KR | Draft email to K.Hunt regarding attorneys fees provision of offer of judgment, review email response from K.Hunt. | 0.20 355.00/hr | 71.00 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| 6/9/2016 - | KR | Draft email to K.Hunt regarding status conference and issue of attorneys' fees, review response from K.Hunt. | 0.20 355.00/hr | 71.00 |
| | | 68 Bankruptcy Litigation (Plaintiff) | | |

Exh  C-44

Los Robles Care Center, Inc.                                                          Page    11

|  |  |  | Hrs/Rate | Amount |
|---|---|---|---|---|
| 7/16/2016 - | LJP | Review email from M. Gottfried regarding proposal; Prepare response. | 0.40 455.00/hr | 182.00 |
|  |  | 68 Bankruptcy Litigation (Plaintiff) |  |  |
| 7/31/2016 - | LJP | Review email from M. Gottfried; Review accounting spreadsheet. | 1.10 455.00/hr | 500.50 |
|  |  | 68 Bankruptcy Litigation (Plaintiff) |  |  |
| 12/10/2016 - | LJP | Prepare for and attend hearing on Motion to Dismiss. | 3.10 455.00/hr | 1,410.50 |
|  |  | 68 Bankruptcy Litigation (Plaintiff) |  |  |

SUBTOTAL:                                                     [    58.20       20,142.00]

For professional services rendered                            58.20       $20,142.00

Additional Charges :

|  |  |  | Qty/Price |  |
|---|---|---|---|---|
| | | 68 Bankruptcy Litigation (Plaintiff) | | |
| 1/9/2015 - | HP | Online research for the year of 2015. | 1 872.00 | 872.00 |
|  |  | 68 Bankruptcy Litigation (Plaintiff) |  |  |
| 6/12/2015 - | HP | Court Fees for June 12 of 2015. | 1 350.00 | 350.00 |
|  |  | 68 Bankruptcy Litigation (Plaintiff) |  |  |
| 6/20/2015 - | HP | Postage Expenses for the period of June 20th-December 31st 2015. | 1 25.00 | 25.00 |
|  |  | 68 Bankruptcy Litigation (Plaintiff) |  |  |

SUBTOTAL:                                                              [    1,247.00]

Total costs                                                                 $1,247.00

*Exh C-45*

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

4333 Park Terrace Dr., Suite 205, Westlake Village, CA 91361

A true and correct copy of the foregoing document entitled (*specify*) **DECLARATION OF LAURA J. PORTILLO IN SUPPORT OF PLAINTIFF'S MOTION FOR ENTRY OF JUDGMENT, PLUS INTEREST, COSTS OF SUIT, AND ATTORNEYS' FEES** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **August 19, 2016**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **August 19, 2016**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**By U.S. Mail**
Hon. Peter H. Carroll
**NORTHERN DIVISION**
U.S. Bankruptcy Court
Bin in Intake Section Lobby
1415 State Street
Santa Barbara, CA 93101

☒  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**
(state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 19, 2016 | Heidi Pinkston | *heidi pinkston* |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                **F 9013-3.1.PROOF.SERVICE**

## SERVICE LIST

**Served Electronically via Court's Notice of Electronic Filing ("NEF") System:**

- **Brian D Fittipaldi**    brian.fittipaldi@usdoj.gov
- **Michael I Gottfried**    mgottfried@lgbfirm.com,
  kalandy@lgbfirm.com;cboyias@lgbfirm.com;srichmond@lgbfirm.com;sdeiches@lgbfirm.com;mmocciaro@lgbfirm.com
- **Laura J Portillo**    office@brinkmanlaw.com, brinkmanlaw@ecf.inforuptcy.com
- **Kevin C Ronk**    Kevin@brinkmanlaw.com, brinkmanlaw@ecf.inforuptcy.com
- **United States Trustee (ND)**    ustpregion16.nd.ecf@usdoj.gov
- **Roye Zur**    rzur@lgbfirm.com,
  kalandy@lgbfirm.com;srichmond@lgbfirm.com;cboyias@lgbfirm.com;sdeiches@lgbfirm.com;mmocciaro@lgbfirm.com


**Served by U.S. Mail**:

Brian D. Fittipaldi
128 E Carrillo St
Santa Barbara, CA 93101


United States Trustee (ND)
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                    F 9013-3.1.PROOF.SERVICE